# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| DARIUS JERMAINE BLAKEMORE, ) | |
| ) | Case Nos. 1:16-cr-23; 1:19-cv-160 |
| *Petitioner*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Susan K. Lee |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 1 in Case No. 1:19-cv-160; Doc. 228 in Case No. 1:16-cr-23). For the reasons herein, the motion is **DENIED**.

## I.   BACKGROUND

On June 28, 2017, after the second day of trial, Petitioner entered a plea agreement, in which he agreed to plead guilty to: (1) conspiring to distribute a mixture and substance containing a detectable amount of heroin, which resulted in the death of another person from their use of such heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 ("Count One"); (2) distribution of a mixture and substance containing a detectable amount of heroin, which resulted in the death of another person from their use of such heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count Two"); (3) possession with intent to distribute a mixture and substance containing a detectable about of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count Five"); (4) possession with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(C) ("Count Six"); and (5) possession with intent to distribute a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count Seven"). (Doc. 167 in Case No. 1:16-cr-23.) In his plea agreement, Petitioner agreed and stipulated to the following factual basis to support his guilty plea:

    a)     Beginning as early as January 1, 2016, and continuing until on or about March 16, 2016, the defendant, Darius Jermaine Blakemore, conspired with Joshua Corbett ("Corbett") and Jessica Rachels ("Rachels"), and others to distribute and possess with the intent to distribute heroin in the Eastern District of Tennessee.

    b)     On February 22, 2016, at approximately 6:00 p.m., Blakemore sold approximately one gram of heroin to Rachels for $200.00 in the parking lot of a McDonald's located on Rossville Boulevard in Chattanooga, Tennessee. Rachels called Blakemore directly to arrange the transaction. After Rachels arrived at the McDonald's parking lot, Blakemore gave the heroin to one of his runners, Corbett, who in turn distributed the heroin to Rachels. Corbett then returned to Blakemore's vehicle, which was in the McDonald's parking lot, and gave Blakemore $200.00 he obtained from Rachels for the heroin.

    c)     Rachels distributed a portion of the heroin she received from Corbett to Logan Whiteaker ("Whiteaker"), who drove her to the McDonald's parking lot. Rachels called Blakemore on Whiteaker's phone to broker the deal. Whiteaker took Rachels home and dropped her off shortly after the transaction took place.

    d)     On February 23, 2016, at approximately 9:00 a.m., Whiteaker was found dead at his residence in Red Bank, Tennessee. Whiteaker died from a heroin overdose. Whiteaker was found dead on the floor of the bathroom in his residence. A hypodermic needle was found next to Whiteaker on the floor and .64 grams of heroin was found in a blue container on the bathroom counter. Whiteaker graduated from Hamilton County Drug Court less than 24 hours prior to his death.

    e)     DEA lab results confirm the substance that was found in the blue container on the bathroom counter in Whiteaker's residence tested positive for .64 grams of heroin.

    f)     Blakemore admits that he distributed heroin to Rachels in furtherance of the above-referenced conspiracy on February 22, 2016, and that Corbett delivered such heroin to Rachels at his behest.

g) Blakemore admits Whiteaker overdosed after using the heroin he distributed to Rachels. Blakemore stipulates that Whiteaker's death resulted directly from the use of the heroin he distributed to Rachels.

h) Blakemore admits that but for Logan Whiteaker's use of the heroin that he (Blakemore) distributed, Logan Whiteaker would not have died.

i) On March 16, 2016, law enforcement conducted a traffic stop of a vehicle in Chattanooga. Hamilton County Sheriff's Deputy Larry Posey initiated the traffic stop after he notice that the passenger of the vehicle was not wearing a seatbelt. Deputy Posey approached the driver's side of the vehicle and DEA Special Agent Bergren approached the passenger's side of the vehicle. The passenger in the vehicle identified himself as Darius Blakemore. While Agent Bergren was speaking to Blakemore, he (Blakemore) leaned over and started the vehicle. Agent Bergren then opened the front passenger's side door to the vehicle, which is where Blakemore was sitting. As Agent Bergren opened the front passenger's side door to the vehicle, a loaded Practical Tactical AR Parts, Model TAC-15, 5.56 caliber semi-automatic pistol fell out of the vehicle onto the ground. At this point, Blakemore was removed from the vehicle. Agent Bergren conducted a pat-down of Blakemore's person, during which he seized approximately 22.28 grams of cocaine base, approximately 20.82 grams of powder cocaine, and approximately 3.31 grams of heroin. The drugs, which were packaged in three separate plastic bags, were located in the right pocket of Blakemore's pants.

j) These substances were tested at the Nashville Sub-Regional Laboratory of the Drug Enforcement Administration, and did test positive for cocaine base, a Schedule II controlled substance, in the amount of 22.28 grams, powder cocaine, a Schedule II controlled substance, in the amount of 20.82 grams, and heroin, a Schedule I controlled substance, in the amount of 3.31 grams.

k) If this case had proceeded to trial, an expert would have testified that possession of approximately 22.28 grams of cocaine base is consistent with distribution and inconsistent with personal use.

l) If this case had proceeded to trial, an expert would have testified that possession of approximately 20.82 grams of power cocaine is consistent with distribution and inconsistent with personal use.

m) If this case had proceeded to trial, an expert would have testified that possession of approximately 3.31 grams of heroin is consistent with distribution and inconsistent with personal use.

n) Blakemore was interviewed by DEA Special Agent Bergren and DEA/TFO Hixson that same day. Blakemore was advised of his Miranda

        Rights and agreed to speak with the officers. In sum, Blakemore admitted he was a drug dealer and stated that he had been selling heroin in the Eastern District of Tennessee since at least January 2016. Blakemore also stated that Corbett purchased heroin from him on numerous occasions.

o)     Blakemore admits he possessed cocaine base, powder cocaine, and heroin that was seized from his person on March 16, 2016, with the intent to distribute the same.

p)     If this case had proceeded to trial, an expert would have testified that possession of approximately 22.28 grams of cocaine base, approximately 20.82 grams of powder cocaine, and approximately 3.31 grams of heroin is consistent with distribution and inconsistent with personal use.

q)     Blakemore admits he conspired with others, including Corbett and Rachels, to distribute and possess with the intent to distribute heroin in the Eastern District of Tennessee.

r)     All of these events occurred in the Eastern District of Tennessee.

(Doc. 167, at 4–7, in Case No. 1:16-cr-23.) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Petitioner and the Government agreed that 276 months' imprisonment was an appropriate total sentence. (*Id*. at 7–8.)

On June 28, 2017, United States District Court Judge Harry S. Mattice, Jr., conducted a change-of-plea hearing. (*See* Doc. 209 in Case No. 1:16-cr- 23.) After Judge Mattice accepted Petitioner's guilty plea, the Court held a sentencing hearing on May 21, 2018, at which Judge Mattice accepted the parties' plea agreement. (*See* Doc. 222 in Case No. 1:16-cr-23.) Consistent with the plea agreement, Judge Mattice sentenced Petitioner to a total of 276 months' imprisonment, consisting of 276 months' imprisonment on Counts One and Two, and 240 months' imprisonment on Counts Five, Six, and Seven, to be served concurrently. (Doc. 223 in Case No. 1:16-cr-23.) Petitioner did not appeal the Court's judgment but represents that he instructed his attorney to file an appeal. (Doc. 1 in Case No. 1:19-cv-160.)

On May 28, 2019, Petitioner timely filed the present § 2255 motion, along with a declaration in support of his motion. (*Id*.; Doc. 3 in Case No. 1:19-cv-160.) In his motion, he

asserted he received ineffective assistance of counsel because his counsel did not file an appeal on his behalf despite instructions to do so and because counsel failed to investigate the facts supporting his enhanced sentence under 21 U.S.C. §§ 841(b)(1)(C). (*Id*.) Petitioner also asserted that the Government engaged in prosecutorial misconduct by selectively and vindictively prosecuting him despite knowing there was "sufficient evidence and cause to determine another individual was responsible for [the] death that [was] used to enhance [his] sentence." (*Id*. at 5.) On February 22, 2022, the Court denied Petitioner's claims based on counsel's alleged failure to investigate and regarding the sentencing enhancements (Doc. 16) and set an evidentiary hearing on Petitioner's failure-to-appeal claim.

At Petitioner's May 12, 2022 hearing, Petitioner testified that he entered a guilty plea during trial based on the advice of his counsel, Amanda Dunn. However, he did not feel Dunn was representing him appropriately and previously had sought her withdrawal from the case. Petitioner stated that he pled guilty because he wanted to move forward with an appeal, and the fastest way for him to do so was to plead guilty and appeal his sentence. His stated grounds for such an appeal were Dunn's alleged ineffective representation of him. Forty-eight hours after entering his guilty plea, Petitioner moved to withdraw his plea, and Dunn moved to withdraw as Petitioner's counsel. The Court granted Dunn's motion to withdraw and appointed Christopher R. Stanford to represent him. (Doc. 214.)

Petitioner testified that, after Stanford was appointed, he informed Stanford that he wanted to appeal on the grounds of ineffective assistance of counsel either during their first or second meeting. He and Stanford also discussed his motion to withdraw his guilty plea. Petitioner stated that he withdrew his motion after Stanford informed him that, if he was successful in withdrawing his plea, he could face a sentence of 360 months to life imprisonment.

Further, Petitioner said that, after his sentencing, he repeatedly tried to reach out to Stanford to check on the status of his appeal. He stated that he never received a response from Stanford.

After Petitioner finished testifying, Stanford took the stand. Stanford testified that he represented dozens of criminal defendants in federal court and was familiar with his obligation to file an appeal on behalf of a client if requested. He stated that it was his practice to routinely review plea agreements with defendants in great detail and that Petitioner did not express any confusion or misunderstanding of the terms of his plea agreement. He confirmed that he discussed the ramifications of withdrawing the guilty plea with Petitioner but said that he did not ever discuss filing an appeal during their three or four meetings and that Petitioner never instructed him to file an appeal. Stanford stated that, had he known that Defendant wanted to appeal his sentence, he would have altered the plea agreement to omit the plea waiver to enable such an appeal. However, he testified that Petitioner never mentioned filing an appeal once he got to prison and the only post-conviction communication that he received from Petitioner was a request for a file, which he mailed to Petitioner.

II. STANDARD OF LAW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III. ANALYSIS

Following the Court's previous memorandum opinion, the only remaining claim to resolve is Petitioner's claim of ineffective assistance of counsel for failure to timely file an appeal. To collaterally attack a conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018). However, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, courts should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

"An attorney performs deficiently if, after consulting with his client, he 'disregards specific instructions' from his client 'to file a notice of appeal'—'a purely ministerial task.'" *Pola v. United States*, 778 F.3d 525, 533 (6th Cir. 2015) (quoting *Roe v. Flores-Ortega,* 528 U.S.

7

Case 1:19-cv-00160-TRM-SKL   Document 21   Filed 06/06/22   Page 7 of 9   PageID #: 158

470, 477 (2000)). Additionally, a defendant is prejudiced by his attorney's failure to file a notice of appeal after express instructions to do so because he has been deprived "of the appellate proceeding altogether." *Id*. The remedy for such a violation is leave to file a delayed appeal. *Hamilton v. United States*, 566 F. App'x 440, 445 (6th Cir. 2014).

At the hearing, Petitioner did not offer any credible evidence that he requested Stanford file an appeal on his behalf. Rather, during the hearing, he expressed consistent confusion as to whether he wanted to file an appeal or a post-conviction challenge, like this one, based on ineffective assistance of counsel. By contrast, Stanford was consistent in his assertions that he always discussed plea agreements and the ramifications of plea waivers with defendants. He repeatedly stated that, had Petitioner requested that he file an appeal, he would have filed said appeal. The Court finds Stanford's testimony credible. Consequently, the Court finds that there is no credible evidence in the record indicating that Petitioner requested an appeal. Accordingly, Petitioner's § 2255 motion will be denied.

## IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 motion (Doc. 1 in Case No. 1:19-cv-160; Doc. 228 in Case No. 1:16-cr-23) is **DENIED**. Should Petitioner give timely notice of an appeal from this order, such notice will be treated as an application for a certificate of appealability, which is **DENIED** because he has failed to make a substantial showing of the denial of a constitutional right or to present a question of some substance about which reasonable jurists could differ. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

8

Case 1:19-cv-00160-TRM-SKL   Document 21   Filed 06/06/22   Page 8 of 9   PageID #: 159

**AN APPROPRIATE JUDGMENT SHALL ENTER**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**